UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SEBRITE AGENCY, INC., | Case No. 11-CV-3526 (PJS/SER) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ARTHUR PLATT; DENISE WISHCOP; JOHN DOE; and JANE DOE, | |
| Defendants. | |

> Martin D. Kappenman and Gregory L. Peters, SEATON, PETERS & REVNEW, P.A., for plaintiff.
>
> Andrew T. Jackola, ANDREW T. JACKOLA, PLC, and Charles A. Horowitz, MANSFIELD TANICK & COHEN, PA, for defendants.

Plaintiff Sebrite Agency, Inc. ("Sebrite") is a small insurance agency located in Minnetonka, Minnesota.  Defendant Arthur Platt worked as an agent for Sebrite.  Defendant Denise Wishcop is Platt's girlfriend.  Platt was fired by Sebrite in 2011, after Sebrite learned that Platt had established a competing agency for the purpose of stealing Sebrite's clients.  It does not appear that Platt was successful in permanently diverting any significant amount of business from Sebrite.  It also appears that Sebrite will have trouble recovering damages from Platt, as he has few assets.  Sebrite has nevertheless sued Platt and Wishcop.

"This Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints — complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Gurman v. Metro Housing and Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).  In Sebrite's case, the Court's criticism fell on deaf ears, as its amended complaint against Platt and his girlfriend contains 14 counts, many of which seem to serve no practical purpose.  *See* Am. Compl. [ECF No. 32].  Defendants now move to dismiss 6 of those

14 counts:  Count I (breach of employment agreement); Count III (tortious interference with contract and with prospective business advantage); Count VII (conversion); Count VIII (civil liability for theft); Count IX (Computer Fraud and Abuse Act ("CFAA")); and Count XII (Racketeer Influenced and Corrupt Organizations Act ("RICO")).  *See* Defs. Reply Mem. [ECF No. 39].

For the reasons that follow, the Court dismisses Sebrite's two federal claims and declines to exercise supplemental jurisdiction over Sebrite's 12 state-law claims.

## A.  Standard of Review

Defendants move to dismiss Sebrite's amended complaint under Fed. R. Civ. P. 12(b)(6).[1]  But both parties have submitted — and ask this Court to consider — numerous materials outside of the amended complaint, including lengthy affidavits, emails, and other documents.  *See, e.g.*, ECF Nos. 35-37, 41.  The Court declines to consider this evidence and thereby convert defendants' motion to dismiss into one for summary judgment, especially given that this case is in its infancy, the parties have engaged in no discovery, and many of the disputes will clearly turn on the credibility of witnesses.  *See Evans v. McDonnell Aircraft Corp.*, 395 F.2d 359, 361 (8th Cir. 1968); *see also* Fed. R. Civ. P. 12(d).

Under Fed. R. Civ. P. 12(b)(6), a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins.*

---

[1]Defendants filed a motion to dismiss three months after answering Sebrite's original complaint.  *See* ECF No. 19.  As defendants concede, they should have moved for judgment on the pleadings under Rule 12(c) rather than to dismiss under Rule 12(b)(6).  *See Ashley Cnty v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  The issue is moot, though, because while defendants' motion was pending, Sebrite amended its complaint.  *See* ECF No. 32.  In lieu of answering the amended complaint, defendants properly moved to dismiss the amended complaint under Rule 12(b)(6).  *See* ECF No. 33.

*Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the plaintiff's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  In assessing a claim's plausibility, the Court may disregard any allegation that is conclusory.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (holding that "conclusory" allegations "are not entitled to the assumption of truth").

The parties are familiar with the facts, so they will not be repeated here.

### B.  Count IX (CFAA)

The CFAA forbids any person "knowingly and with intent to defraud" to "access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtain[] anything of value . . . ."  18 U.S.C. § 1030(a)(4).  The CFAA is primarily a criminal statute, but it provides a civil remedy to those who are injured by a violation of the statute.  *See* 18 U.S.C. § 1030(g).

Sebrite alleges that Platt, in furtherance of his fraudulent scheme to steal Sebrite's clients, accessed Sebrite's computers "without authorization" or "in excess of authorization" in violation of the CFAA.  *See* Am. Compl. ¶¶ 71-77.  According to Sebrite, Platt furthered his fraudulent scheme by "forward[ing] emails containing confidential company information for no less than seventy-four (74) of Sebrite's clients to the e-mail account he and Wishcop shared."  Am. Compl. ¶ 75.

Sebrite does not dispute, however, that, as Vice President of Insurance Sales, Platt was authorized to access all of the confidential information on Sebrite's computers.  *See* Am. Compl. ¶ 10 ("As additional consideration for entering into the Employment Agreement, Sebrite agreed

to provide and provided to Platt valuable training and access to substantial, confidential and proprietary information . . . ."). In other words, Platt did not access computers or databases that he was forbidden to use. But Sebrite contends that, when an employer such as Sebrite gives an employee such as Platt authority to access information on the employer's computers, that authority is implicitly conditioned on the employee using the information to further the employer's business. When an employee uses an employer's computer in some other manner — in Platt's case, to steal clients — then, Sebrite argues, the employee has acted "without authorization" or "in excess of authorization" in violation of the CFAA.

As the parties recognize, the federal courts have disagreed about whether the CFAA is violated when a person who has authority to "access[] a protected computer" misuses the information that he or she obtains.[2] This Court previously endorsed the narrower interpretation

---

[2]*Compare, e.g., United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc) ("[W]e hold that the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions. If Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly.") *and Condux Intern., Inc. v. Haugum*, 08-cv-4824 (ADM/JSM), 2008 WL 5244818, at *6 (D. Minn. Dec. 15, 2008) ("[T]he conduct at the heart of the dispute is not the access of the confidential business information but rather the alleged subsequent misuse or misappropriation of that information. Such allegations, however, are not sufficient to state a claim for violations of [18 U.S.C. § 1030(a)(4)].") *and Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) ("The CFAA expressly prohibits improper 'access' of computer information. It does not prohibit misuse or misappropriation.") *and Walsh Bishop Assocs., Inc. v. O'Brien*, 11-cv-2673 (DSD/AJB), 2012 WL 669069, at *4 (D. Minn. Feb. 28, 2012) (same) *with Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 419-21 (7th Cir. 2006) (explaining that an employee acts "without authorization" when he accesses a computer with the intent to destroy company information because his breach of his duty of loyalty terminates his authority to access the computer) *and United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded.") *and Personalized Brokerage Services, LLC v. Lucius*, 05-cv-1663 (PAM/FLN), 2006 WL 208781, at *2 (D. Minn. Jan. 26, 2006) ("An employee who exceeds authorized access to an employer's computer may violate the CFAA.").

of the CFAA, holding that the misuse or misappropriation of confidential information stored on a computer to which the defendant has authority to access does not give rise to liability. *See Xcedex, Inc. v. VMware, Inc,* No. 10-CV-3589 (PJS/JJK), 2011 WL 2600688, at *4-5 (D. Minn. June 8, 2011), *adopted by* 2011 WL 2581754, at *1 (D. Minn. June 30, 2011). The Eighth Circuit still has not directly addressed this question, and nothing in the cases decided since *Xcedex* has persuaded the Court to change its mind.[3] The Court continues to believe that the narrower interpretation of the CFAA is more consistent with statutory text, legislative history, and the rule of lenity. *See Walsh Bishop*, 2012 WL 669069, at *3. Moreover, the broader interpretation would transform just about every state-law claim for misappropriation of trade secrets into a federal lawsuit, *see Condux*, 2008 WL 5244818, at *6, not to mention expose employees who violate their employers' computer-use restrictions to criminal liability, *see Nosal*, 676 F.3d at 861-62. The Court continues to believe that, if Congress meant to so vastly expand the jurisdiction of the federal courts, Congress would have been much more explicit.

Under the Court's interpretation of the CFAA, Sebrite's allegation that Platt improperly used confidential information that he had authority to access fails to state a claim under 18 U.S.C. § 1030(a)(4). Count IX is therefore dismissed.

---

[3]Neither party cited *United States v. Teague*, 646 F.3d 1119 (8th Cir. 2011). There, the defendant used her privileged access to the National Student Loan Data System to obtain the student-loan records of President Obama. *See id.* at 1121. Following a jury trial, the defendant was convicted of one count of exceeding authorized access to a computer in violation of the CFAA. *See id.* On appeal, the Eighth Circuit rejected the defendant's argument that there was insufficient evidence that she was the person who accessed President Obama's student-loan records. *See id.* at 1122-23. Because the defendant did not raise the issue, the Eighth Circuit did not decide whether accessing information for an improper purpose could violate the CFAA.

*C.  Count XII (RICO)*

Section 1962(c) of Title 18 makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Despite this broad language, "RICO 'does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)).  Although RICO is a criminal statute, § 1964(c) provides a civil remedy for any person "injured in his business or property by reason of a violation of" the law's substantive provisions.

To plead a viable RICO claim for damages, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co, Inc.*, 473 U.S. 479, 496 (1985)).  The elements of a RICO claim must be pleaded with respect to each individual defendant, *see Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008), and with particularity under Fed. R. Civ. P. 9(b), *see Crest Const. II*, 660 F.3d at 353.

Because Sebrite fails to allege that either Platt or Wishcop conducted an enterprise through a pattern of racketeering activity, the Court dismisses Count XII.

1.  Enterprise

An enterprise, for purposes of RICO, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). Sebrite alleges an association-in-fact enterprise consisting of Platt, Wishcop, and other individuals to be named later ("Platt Enterprise"). *See* Am. Compl. ¶ 100.

"An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Under longstanding Eighth Circuit precedent, an alleged RICO enterprise must also have "an ascertainable structure distinct from the conduct of a pattern of racketeering." *Crest Const. II*, 660 F.3d at 354 (quoting *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004)); *see also United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir. 1982) ("[A]n enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts.").[4] Whether the enterprise has a structure that is distinct from the pattern of racketeering activity turns on whether the enterprise would still exist if the conduct that constitutes the racketeering activity were absent. *See Crest Const. II*, 660 F.3d at 354-55 (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997)); *Diamonds Plus, Inc. v. Kolber*, 960

---

[4]Some courts have interpreted *Boyle* as lowering the threshold for pleading association-in-fact enterprises. *See, e.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388-89 (7th Cir. 2010); *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 826 (D.N.J. 2011). Even after *Boyle*, however, the Eighth Circuit has continued to require that a RICO enterprise have a structure that is separate and distinct from the pattern of racketeering activity. *See Crest Const. II*, 660 F.3d at 355 (discussing *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815-16 (8th Cir. 1992), at length and with approval). Neither Sebrite nor defendants argue that the Supreme Court abrogated the Eighth Circuit's pre-*Boyle* cases on this requirement. *See* Sebrite Mem. at 32-33 [ECF No. 34] ("To survive dismissal, the enterprise must have 'an ongoing structure independent from the predicate acts of racketeering.'" (quoting *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997))); Defs. Reply Mem. at 20.

F.2d 765, 770 (8th Cir. 1992) ("The focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense.").

In *Stephens, Inc. v. Geldermann, Inc.*, for example, the plaintiff ("Stephens") sued a commodities-futures merchant ("Geldermann") under RICO for Stephens's trading losses, alleging an association-in-fact enterprise consisting of Geldermann, several of Geldermann's employees, and one of Stephens's employees. 962 F.2d 808, 815 (8th Cir. 1992). On appeal, the Eighth Circuit held that Stephens failed to allege a RICO enterprise that was distinct from the alleged pattern of racketeering activity, as the only thing linking the defendants, and defining them as a distinct group, was their alleged participation in the underlying commodities-trading fraud. *Id.* at 815-16. Once the predicate acts of mail and wire fraud were removed, said the Eighth Circuit, "the association-in-fact enterprise . . . had no form or structure." *Id.* at 816.

Like the plaintiff in *Stephens*, Sebrite fails to allege an enterprise that is distinct from the predicate acts of mail and wire fraud. According to Sebrite, Platt fraudulently diverted business from Sebrite to North Bay Agency, Inc. ("North Bay"), a competing insurance agency that Platt helped establish in 2009 for the very purpose of stealing Sebrite's clients. *See* Am. Compl. ¶¶ 15, 104, 109. In furtherance of the fraud, Platt allegedly emailed Sebrite's confidential information to an email account that he and Wishcop shared. *See* Am. Compl. ¶¶ 107-08. Wishcop facilitated the fraudulent scheme, says Sebrite, by knowingly allowing income generated from the fraud to be deposited into her bank accounts. *See* Am. Compl. ¶¶ 16-18, 110-11. Her facilitation of the financial transactions, according to Sebrite, was essential to the fraud. *See* Am. Compl. ¶ 111. All of these allegations, however, go directly to the conduct that constitutes the predicate acts of mail and wire fraud; they do not permit a plausible inference that

Platt, Wishcop, and other unnamed members of the Platt Enterprise had any formal or informal structure that extended "beyond the minimal association surrounding the pattern of racketeering activity." *Stephens*, 962 F.2d at 816.

The Court acknowledges that Sebrite alleged that the "Platt Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties and coordination between the members of the Platt Enterprise." Am. Compl. ¶ 103. Without more specificity, though, this paragraph is merely the kind of conclusory allegation that the Eighth Circuit found to be insufficient in *Crest Const. II*. *See* 660 F.3d at 353-54 (finding the plaintiff's nonspecific allegations that the defendants "fraudulently grew a 'web of interrelated' commonly-owned and managed companies that engaged in a host of 'fraudulent and illegal' business practices" to be insufficient). At most, Sebrite's allegations, if true, make out a plausible claim that Platt and Wishcop conspired to defraud Sebrite. But a RICO enterprise must "consist[] of more than simple conspiracies to perpetrate the predicate acts of racketeering." *Bledsoe*, 674 F.2d at 664.

At the hearing, Sebrite suggested for the first time that, apart from the predicate acts of mail and wire fraud, Platt and Wishcop associated with North Bay and Lyle Snedeker (North Bay's founder) for the purpose of operating a *legitimate* insurance agency. Defendants concede that Sebrite could have identified North Bay as the RICO enterprise, and could have alleged that Platt and Wishcop conducted North Bay's business through a pattern of racketeering activity. *See* Defs. Reply Mem. at 20. Sebrite did not do so, however. The enterprise that Sebrite names in the amended complaint is not North Bay, but the Platt Enterprise — an association-in-fact enterprise consisting of Platt, Wishcop, and other unnamed individuals. The amended complaint also fails to allege that Platt, Wishcop, and Snedeker associated with one another to procure

legitimate insurance business.[5]  In short, the argument that Sebrite raised at the hearing relies on facts that are not pleaded in the amended complaint.  Because the amended complaint, as pleaded, fails to allege an enterprise that has an ascertainable structure that is distinct from the predicate acts of mail and wire fraud, Sebrite fails to state a RICO claim.

### 2. Pattern of Racketeering Activity

Even if the Court is incorrect, Sebrite's RICO claim fails for a separate reason:  Sebrite does not allege a pattern of racketeering activity.  To satisfy the pattern element, a plaintiff must allege "two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'"  *Nitro Dist., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Wisdom*, 167 F.3d at 406).[6]  This requirement is commonly referred to as "continuity plus relationship."  *Handeen*, 112 F.3d at 1353 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  As to relationship, acts of racketeering activity such as mail and wire fraud are related if they "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 240).  And as to continuity, a plaintiff may allege either open-ended or closed-ended continuity.  Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc.*, 492 U.S.

---

[5]The Court recognizes that exclusively criminal organizations may constitute enterprises for purposes of RICO.  *See United States v. Turkette*, 452 U.S. 576, 580-81 (1981).  Thus, Sebrite's failure to allege that the Platt Enterprise conducted legitimate activities is not fatal.  What is fatal, however, is Sebrite's failure to allege that the Platt Enterprise engaged in any legitimate *or* illegitimate activities beyond the predicate acts of mail and wire fraud.

[6]"Racketeering activity" is defined to include a host of acts prohibited by state and federal law, including murder, kidnapping, gambling, arson, bribery, extortion, and (most relevant here) mail and wire fraud.  *See* 18 U.S.C. § 1961(1).

at 241; *see also Craig Outdoor Adver.*, 528 F.3d at 1028 ("A plaintiff may establish open-ended continuity by showing that the predicate acts themselves involve a distinct threat of long-term racketeering activity . . . ."). Closed-ended continuity, meanwhile, refers to "a closed period of repeated conduct" and may be established by showing "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 241-42.

Here, Sebrite fails to allege either open-ended or closed-ended continuity. To begin with, there are no facts in the amended complaint that permit a plausible inference that defendants' predicate acts of mail and wire fraud "involve a distinct threat of long-term racketeering activity," as would be necessary to establish open-ended continuity. *Craig Outdoor Adver.*, 528 F.3d at 1028. To the contrary, Sebrite's memorandum strongly implies that all criminal activities ceased following Sebrite's discovery of the fraudulent scheme and termination of Platt's employment. *See* Sebrite Mem. at 1. Platt and Wishcop are now employed by legitimate insurance agencies, *see* Am. Compl. ¶¶ 25-26, and Sebrite does not allege that either of them are presently engaging in any unlawful activities. In fact, the only paragraph in the amended complaint that even remotely hints at any continuing criminal conduct is Sebrite's allegation that, "[o]n November 18, 2011, Platt continued Defendants [sic] attempt to recruit others to join the scheme to defraud or obtain money from Plaintiff." Am. Compl. ¶ 112. This paragraph does not, however, allege a predicate act of racketeering activity (e.g., mail or wire fraud) with particularity, as required by Rule 9(b).

Sebrite also fails to allege closed-ended continuity. According to Sebrite, on March 23, 2011 and May 11, 2011, Platt mailed "cancellation request[s]" to two of Sebrite's clients in furtherance of his fraudulent scheme. Am. Compl. ¶¶ 114-15. But two predicate acts of mail

fraud in less than two months do not represent the type of "long-term criminal conduct" with which Congress was concerned when it enacted RICO. *H.J. Inc.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement . . . ."); *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215-16 (8th Cir. 1993) (holding that an 11-month period was insubstantial and legally insufficient to establish closed-ended continuity).

Sebrite points to its allegations that Platt diverted business from Sebrite from December 2009 through April 2011. *See* Am. Compl. ¶¶ 88-91. These allegations, if true, may give rise to state-law claims for breach of contract or breach of fiduciary duty. But they are not, in and of themselves, predicate acts for purposes of RICO. *See* 18 U.S.C. § 1961(1).

Sebrite also points to paragraph 108 of its amended complaint, which alleges that Platt used Sebrite's computer to send confidential information to himself and Wishcop in furtherance of his fraudulent scheme. *See* Am. Compl. ¶ 108. Even if this paragraph can be construed as attempting to allege the predicate act of wire fraud, it fails to allege the fraud with the particularity required by Rule 9(b). *See Crest Const. II*, 660 F.3d at 353 ("Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how . . . ."). Conspicuously absent is any indication of *when* Platt's alleged wire fraud occurred. Without this information, the amended complaint does not allege that the predicate acts of wire fraud extended over a substantial period of time, as is necessary to establish closed-ended continuity.

In short, Sebrite does not allege that defendants' predicate acts of mail and wire fraud "amount to or pose a threat of continued criminal activity." *Nitro Dist., Inc. v. Alticor, Inc.*, 565 F.3d at 428 (internal quotations omitted). Sebrite's RICO claim is therefore dismissed.[7]

### D. Supplemental Jurisdiction

A federal court may decline to exercise supplemental jurisdiction over state-law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because this Court has original jurisdiction over only two of Sebrite's claims — and because those claims have been dismissed — the Court finds that Sebrite's remaining state-law claims should be decided by a state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Barstad v. Murray Cnty*, 420 F.3d 880, 888 (8th Cir. 2005). The Court therefore declines to exercise supplemental jurisdiction over Sebrite's state-law claims and dismisses those claims without prejudice.

---

[7]At the hearing, Sebrite orally requested permission to amend its complaint. The Court denies Sebrite's request for two reasons. First, the request is not properly before the Court. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("The District of Minnesota's Local Rule 15.1 requires a plaintiff to submit a proposed amended pleading with a motion to amend the complaint. A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."). Second, defendants' original motion to dismiss told Sebrite precisely why its RICO claim was inadequately pleaded. In its amended complaint, Sebrite failed to fix those deficiencies. The Court sees no reason to give Sebrite a third bite at the apple, especially as Sebrite is straining to make a federal case out of what appears to be a routine state-law dispute among citizens of Minnesota.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' amended motion [ECF No. 33] to dismiss certain claims is GRANTED IN PART and DENIED IN PART.

2. Defendants' motion is GRANTED to the following extent:

    a. Count IX (Computer Fraud and Abuse Act) is DISMISSED WITH PREJUDICE AND ON THE MERITS.

    b. Count XII (Racketeer Influenced and Corrupt Organizations Act) is DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. Defendants' motion is DENIED in all other respects.

4. Plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 7, 2012                    s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge